Nakita Ulmer,

      Plaintiff,

      v.

Detective Moises Avila #157,
Officer B. McKeon #296,
Joliet Police Department, and
City of Joliet,

      Defendants.

Case No. 15 CV 3659

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

This action concerns the alleged misconduct of Defendants Avila, McKeon, the Joliet Police Department, and the City of Joliet in arresting, detaining, and prosecuting Plaintiff Nakita Ulmer. Plaintiff brought this action pursuant to 42 U.S.C. § 1983 and alleges two causes of action in his First Amended Complaint: (1) a Fourteenth Amendment Equal Protection violation; and (2) a Fourteenth Amendment Due Process violation. [1]. Defendants moved to dismiss both counts of the complaint for failure to state a claim under Rule 12(b)(6). That motion is granted.

## I.    Background[1]

On April 1, 2009, the Joliet Police Department responded to a home invasion and sexual assault that occurred at 303 South Park in Joliet, Illinois. [32] First

---

[1] The Background section is based upon the well-pleaded factual allegations of the complaint and the related documents properly before this Court. The facts are accepted as true solely for the purpose of this motion.

Amended Complaint ("FAC"), ¶¶ 7, 9.  During subsequent police interviews, the victim stated that she could not identify the intruder, but did provide a general description of an "unknown black male" with no visible facial hair, piercings, or tattoos.  *Id.* at ¶ 11.  Upon further questioning by Defendant, Detective Avila, the victim recounted that the intruder "did not speak like a male black from the Joliet area."  *Id.* at ¶ 17.  Based upon the investigation and that prior description of the offender, Avila later assembled a photo array of possible suspects, which included a photo of the plaintiff, Nakita Ulmer.  *Id.* at ¶¶ 20-21.  The victim did not recognize anyone in this first line-up but, upon reviewing a second photo array, identified Anthony Williams as "having similar eyes" to the intruder.  *Id.* at ¶¶ 22-24.  After no DNA evidence materialized to support a basis to arrest Anthony Williams, Avila suspended the investigation.  *Id.* at ¶ 27.

On October 6, 2009, another home invasion and assault occurred in Joliet.  *Id.* at ¶ 29.  Once again, the victim could only identify the intruder as a "black male."  *Id.* at ¶ 31.  On October 10, 2009, Defendant Officer McKeon allegedly saw Ulmer walking down the street and detained him.  *Id.* at ¶ 32.  After searching Ulmer's pockets and questioning him, McKeon prepared a report indicating that he matched the description of the suspect in the October 6th home invasion.  *Id.* at ¶¶ 33-34.  Plaintiff alleges that, after McKeon prepared this report, McKeon and Avila conspired to frame Ulmer for either the April or October home invasion.  *Id.* at ¶¶ 36-37.  In furtherance of their scheme, Avila showed a third photo array to the victim of the April 2009 home invasion.  *Id.* at ¶ 39.  Allegedly, this array

highlighted Ulmer in order to convince the victim to identify him as the intruder. *Id.* Although the victim did not identify Ulmer, Avila falsely reported a positive identification of Ulmer as the intruder. *Id.* at ¶¶ 39-40.

In order to obtain an arrest warrant, Avila presented this fabricated victim identification to the Assistant State's Attorney. *Id.* at ¶ 41-42. While presenting the information, Avila falsely characterized the identification as "definite, positive, and reliable." *Id.* at ¶ 42. In addition, Avila concealed that: (1) the victim had previously told police that she could not identify the intruder; (2) the victim failed to identify Ulmer in a previous photo array, but rather identified another person in a separate photo array; (3) the victim stated that she needed to hear the Plaintiff's voice before identifying him as the intruder; (4) the victim described the intruder as sounding different than other males in Joliet; and (5) the victim falsely reported that she had been raped by the intruder. *Id.* at ¶¶ 42-48. After presenting the misleading evidence, Avila swore out a criminal complaint against Ulmer and persuaded a judge to issue an arrest warrant, which included a D-Bond in the amount of $3,000,000 – (10% deposit to apply). *Id.* at ¶ 49.

On October 15, 2009, without informing Ulmer of the charges against him, Avila told Ulmer to come to the police station for a suspected parole violation. *Id.* at ¶ 66. In his complaint, Ulmer alleges that when he arrived at the station he unknowingly waived his right to be advised of the charges against him and to have an attorney present before questioning. *Id.* at ¶ 67. In addition, the parole

violation ruse allegedly caused Ulmer's mother to consent to a search of his bedroom. *Id.* at ¶ 68.

At the police station, Avila attempted to coax Ulmer into confessing to the October 2009 home invasion. *Id.* at ¶ 72. When Ulmer did not confess or implicate himself, Avila instructed officers to inform him that he was under arrest for the separate, April 2009 home invasion. *Id.* After notifying Ulmer of his arrest, Avila persuaded him to submit to a polygraph examination and DNA sample to clear his name. *Id.* at ¶¶ 73-75. After twelve hours of questioning and examination, no incriminating evidence was produced, and Avila instructed officers to falsely create evidence to implicate Ulmer as the April 2009 intruder. *Id.* at ¶¶ 76-77. The counterfeited evidence included an incorrect representation of a witness interview, a misleading polygraph examination report, and a false DNA laboratory report. *Id.* at ¶¶ 78-79, 82.

On November 12, 2009, in reliance on the fabricated evidence created by Avila and other officers, a grand jury indicted Ulmer on charges for the April 2009 home invasion. *Id.* at ¶ 57. Before trial, the state court granted Ulmer's motion *in limine* to bar the use of certain prosecution evidence. *People v. Ulmer,* No. 3-11-202, 2012 WL 7005834 (Ill. App. Ct. Feb 14, 2012).[2] Although the prosecutor allegedly knew that no evidence existed to support the charges against Ulmer, he allegedly

---

[2] Note that this court takes judicial notice of the state court proceeding because it has a direct relation to the current case at issue. *Opoka v. I.N.S.,* 94 F.3d 392, 394 (7th Cir. 1996) (stating that determinations to be judicially noticed include "proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.").

pursued two meritless appeals in order to protect Detective Avila and the police department. [32] FAC at ¶¶ 59-60.

On February 14, 2012, the appellate court upheld the trial court's evidentiary ruling. *Id.* at ¶ 60. On July 5, 2012, the Supreme Court of Illinois denied the prosecutor's Petition for Leave to Appeal. *Id.* at ¶ 61. Shortly after, the prosecutor decided to *nolle prosequi* all charges against Ulmer. *Id.* As a result of the scheme against him, Ulmer remained detained from December 10, 2010, until February 14, 2012. *Id.* at ¶ 85.

Ulmer filed the current lawsuit on April 27, 2015, asserting two § 1983 claims. Count I alleges that the defendants arbitrarily discriminated against Ulmer, a "black male with a criminal record," in violation of 14th Amendment Equal Protection by falsely arresting him, attempting to coerce a false confession, fabricating evidence, and subjecting him to extended questioning without an attorney. *Id.* at ¶¶ 51-55. Count II alleges that the defendants violated the 14th Amendment Due Process Clause by maliciously manipulating the criminal justice charging process to obtain a criminal complaint, to secure an arrest warrant with a $3,000,000 bond, and to take Ulmer into custody without informing him of the charges. *Id.* at ¶¶ 64-65.

## II.    Legal Standard

Under Rule 12(b)(6), the Court must construe the Complaint in the light most favorable to the Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in his favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013);

*Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). To survive a Rule 12(b)(6) motion, the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Analysis

### A. Fourteenth Amendment Claims

At issue in the present motion are Plaintiff's two causes of action pursuant to 42 U.S.C. § 1983. Count I of Plaintiff's complaint alleges a Fourteenth Amendment Equal Protection violation, and Count II alleges a Fourteenth Amendment Due Process violation. The same § 1983 standards govern both counts.

#### i. Standard for § 1983 Claims

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must "allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or the laws of the United States." *Estate of Sims ex rel Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007). To determine liability under § 1983, it is "necessary to isolate the precise constitutional violation" with

which the defendant is charged, and thus, the "first inquiry" in any § 1983 suit is whether the plaintiff has been "deprived of a right" secured by the Constitution. *Welton v. Anderson,* 770 F.3d 670, 673 (7th Cir. 2014) (internal quotations omitted).

### ii. Statute of Limitations for § 1983 Claims

Also relevant to this Court's analysis are the standards governing the statute of limitations for claims under § 1983. Section 1983 does not contain "an express statute of limitations, so federal courts adopt the forum state's statute of limitations for personal injury claims." *Johnson v. Rivera,* 272 F.3d 519, 520 (7th Cir. 2001). In Illinois, a two-year statute of limitations applies to claims brought under § 1983. *Id.* The "accrual date of a § 1983 cause of action is a question of federal law that is not resolved by state law." *Wallace v. Kato,* 549 U.S. 384, 388 (2007). There is a two-part test to determine the accrual date of a § 1983 claim. First, the court must identify a constitutional injury. *Hileman v. Maze,* 367 F.3d 694, 696 (7th Cir. 2004). Second, "the court must determine the date on which the plaintiff could have sued for that injury." *Id.* This second inquiry determines the date of accrual. Generally, a § 1983 claim accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief, *Wallace,* 549 U.S. at 388, or when the plaintiff knows or should know that his constitutional rights have been violated, *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir. 1992). Having explained the generally governing law, the Court will now address the particular equal protection and due process claims set out in Counts I and II.

**B. Count I: Violation of Equal Protection under 42 U.S.C. § 1983**

In Count I, Plaintiff sets out numerous factual allegations that could possibly support an equal protection claim. In examining the complaint, the Court finds that Plaintiff alleges an equal protection violation based on the following underlying conduct: (1) false arrest; (2) malicious prosecution; (3) fabrication of evidence; and (4) withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). In addition, Plaintiff attempts to recast the § 1983 claim as an independent equal protection violation untethered to any underlying conduct. The Court will first address that attempt at an "independent" equal protection claim.

**i. § 1983 Equal Protection Claim**

Generally speaking, to allege an equal protection claim "a section 1983 plaintiff must allege that a state actor or a person acting under the color of state law purposefully discriminated against him because of his identification with a particular group." *Linda Constr. Inc. v. City of Chicago*, No. 15 C 8714, 2016 WL 1020747, at *5 (N.D. Ill. Mar. 15, 2016) (citing *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994)). However, when an equal protection claim is based upon acts that would be untimely or otherwise defective under another type of Section 1983 claim, characterizing the claim as an equal protection claim will not serve to resurrect the untimely or otherwise defective claim. *Warden v. City of Chicago*, 391 F. Supp. 2d 660, 678 (N.D. Ill. 2005) (citing *Garrison v. Burke*, 165 F.3d 656, 571 (7th Cir. 1999). In other words, the plaintiff may not

attempt to back-door claims that would fail on their own by characterizing them as equal protection claims.

Equal protection claims are subject to the same statute of limitations analysis that applies to all § 1983 claims. *See*, *e.g., Lucien v. Jockish,* 133 F.3d 464, 467 (7th Cir. 1998) (applying Illinois' two-year statute of limitations to the plaintiff's § 1983 equal protection claim). If there is a "series of acts, some of which are time-barred and some of which are not, a plaintiff may not assert a § 1983 equal protection claim for the time-barred allegations." *Hobley v. Burge,* No. 3 C 3678, 2004 WL 26585075, at *8 (N.D. Ill. Oct. 13, 2004) (citing *Garrison,* 165 F.3d at 571) (considering only the alleged actions that were within the limitations period in assessing a § 1983 equal protection claim). If the complaint is about underlying conduct that is time-barred, the plaintiff "cannot escape that result merely by re-characterizing the claim under a different part of the Constitution." *Wallace v. City of Chicago,* 440 F.3d 421, 429-30 (7th Cir. 2006); *Caine v. Burge,* No. 11 C 8996, 2012 WL 2458640, at *10 (N.D. Ill. June 27, 2012) (plaintiff "cannot assert a § 1983 action for an equal protection violation for those acts which are time-barred or otherwise subject to dismissal.").

In *Hobley,* the court found that the plaintiff's § 1983 excessive force claim was time-barred. *Hobley*, 2004 WL 26585075, at *8. The plaintiff then tried to premise a § 1983 equal protection claim on the same allegations of excessive force. *Id.* at *8. The court found that, to the extent that the equal protection claim is premised on excessive force, it is time-barred because the plaintiff cannot assert a § 1983 equal

protection claim for an already time-barred allegation. *Id.* (citing *Garrison,* 165 F.3d at 571). Similarly, in *Wallace* the court dismissed the plaintiff's complaint regarding a false arrest and coerced confession. *Wallace v. City of Chicago,* 440 F.3d 421, 429 (7th Cir. 2006). The plaintiff then tried to fit the facts underlying those claims into a Fourteenth Amendment claim. *Id.* The court found that he could not obtain a different result for an already defective allegation by "re-characterizing the claim under a different part of the Constitution." *Id.* at 429-30.

In this case, the equal protection claim is not actionable because it is based upon the false arrest, malicious prosecution, fabrication of evidence, and *Brady* violation claims that – as explained in greater detail below – are all either time-barred or otherwise defective. Like the plaintiffs in *Hobley* and *Wallace,* Ulmer attempts to re-characterize the claim as solely an equal protection violation. As the court found in those cases, this is not allowable because the complaint refers to underlying conduct that is already defective. To the extent that the Plaintiff re-characterizes otherwise defective claims as equal protection, the Count I equal protection claim is dismissed.

### ii. Fourth Amendment False Arrest

Defendants argue that Plaintiff's equal protection claim based upon his arrest must be dismissed as time-barred under the statute of limitations. The Court agrees. Although the general rule is that a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action, there is a specific rule for false arrest claims. *Serino v. Hensley,* 735 F.3d 588, 591

(7th Cir. 2013). The two year statute of limitations for a § 1983 false arrest claim begins to run at the time the claimant becomes detained pursuant to the legal process. *Wallace,* 549 U.S. at 397. In other words, the clock begins to run "when [a plaintiff] is held pursuant to a warrant or other judicially issued process." *National Cas. C. v. McFatridge,* 604 F.3d 335, 344 (7th Cir. 2010).

In *Serino v. Hensley,* the plaintiff was falsely arrested and arraigned on charges in September 2008. *Serino,* 735 F.3d at 589. Since the false arrest claim was brought in 2012, four years after the plaintiff was detained pursuant to the legal process by being arraigned, the appellate court affirmed the lower court's decision that the claim was time-barred. *Id.* at 591. As in *Serino,* the false arrest claim began to run when Ulmer was held "pursuant to a warrant or other judicially issued process." *National Cas. C.,* 604 F.2d at 344. Ulmer was arrested on October 15, 2009 pursuant to an arrest warrant. [1] at ¶ 70. Ulmer needed to bring his claim on October 15, 2011 – two years after being held pursuant to the arrest warrant. He did not file his complaint until January 7, 2014. This claim is time-barred.

The plaintiff argues that *Heck v. Humphrey,* 512 U.S. 477 (1994) delays the accrual of his claim. Specifically, he states that the statute of limitations did not begin to run until July 6, 2012, the day that the charges were dismissed *nolle prosequi.* Defendant's Response, p. 4. This argument is unavailing. In *Heck,* the Supreme Court held that a § 1983 claim based on an unconstitutional conviction does not accrue until the conviction is invalidated. *Heck,* 512 U.S. at 489-90.

11

Deferred accrual only applies to claims that would necessarily imply the invalidity of a criminal conviction. *Id.* at 487. The *Heck* rule for deferred accrual is called into play "only when there exists a conviction or sentence that has not been . . . invalidated." *Wallace,* 549 U.S. at 393.

In *Serino,* the Plaintiff's false arrest claim's accrual was not deferred under *Heck* because the plaintiff was never convicted. *Serino,* 735 F.3d at 591. At the time that the false arrest claim began to accrue, there was "in existence no criminal conviction that the cause of action would impugn." *Id.* (quoting *Wallace,* 549 U.S. at 393). For these reasons, the court decided that no deferred accrual for the false arrest claim existed. *Id.* Because Ulmer, like *Serino,* was never convicted, his false arrest lawsuit would not have called into question an existing conviction. As in *Serino,* the *Heck* deferred accrual does not apply here. The accrual occurred when Ulmer was detained pursuant to the legal process. To the extent the equal protection claim is based on the fact of Ulmer's alleged false arrest, it is dismissed as time barred.

### iii. Fourteenth Amendment Malicious Prosecution

To the extent Plaintiff's equal protection claim is based upon his allegedly malicious prosecution, it is dismissed. There is no constitutional theory of malicious prosecution arising from injuries in Illinois. According to the Seventh Circuit, federal courts "are rarely the appropriate forum for malicious prosecution claims because there is 'no federal right not to be summoned into court and prosecuted without probable cause.'" *Howlett v. Hack,* 794 F.3d 721, 727 (7th Cir. 2015)

(quoting *Ray v. City of Chicago,* 629 F.3d 591, 594 (7th Cir. 2011)).   More

particularly, the court in *Newsome v. McCabe,* 256 F.3d 747, 750-51 (7th Cir. 2001)

explained that a federal suit for malicious prosecution by state officers is

permissible only if the state in which the plaintiff had been prosecuted does not

provide an adequate remedy.   *See also Llovet v. City of Chicago,* 761 F.3d 759, 762

(7th Cir. 2014).   This is true regardless of whether or not the plaintiff describes his

claim using the specific term malicious prosecution.   Instead, what matters is

whether the plaintiff "in essence" complains of conduct that amounts to malicious

prosecution under state law.   *Brooks v. City of Chicago,* 564 F.3d 830,833 (7th Cir.

2009) (internal quotation marks omitted).

 Ulmer cannot bring a Section 1983 malicious prosecution claim against the

officers because he could have brought a state law malicious prosecution claim.

Illinois provides a state law claim for malicious prosecution and no law shields

officers or the city for this sort of claim.   Since he could have brought the action

against them in state court, he cannot pursue the federal claim.   To the extent that

the equal protection claim is based upon malicious prosecution, it is dismissed.

### iv.  Fabrication of Evidence and *Brady* violation

 From the Complaint it appears that the Plaintiff is attempting to rely upon

the alleged fabrication of evidence and *Brady* violation to support his equal

protection claim.   However, those claims are more appropriately brought as

violations of the due process clause, *see Fields v. Wharrie,* 740 F.3d 1107, 1114 (7th

Cir. 2014); *Brady v. Maryland,* 373 U.S. 83, 87 (1963), which the Court will discuss

in greater detail when analyzing Count II. Since the fabrication and *Brady* claims ultimately fail as constitutional violations under due process, the plaintiff cannot bring them as the underlying conduct justifying a § 1983 equal protection action either. *See Garrison v. Burke,* 165 F.3d 565, 571 (7th Cir. 1999).

In *Caine v. Burge,* a plaintiff brought a § 1983 due process claim based upon fabrication of evidence. *Caine,* 2012 WL 2458640, at *6. The court stated that "a plaintiff cannot assert a § 1983 action for an equal protection violation for those acts which are time-barred or otherwise subject to dismissal." *Id.* at *10. Since the fabricated and falsified evidence due process claims were previously dismissed, the court found that those allegations could not "form part of . . . [Plaintiff's] claim that the defendants deprived him of the equal protection of the laws." *Id.* at *9. As the Court will discuss, the fabrication of evidence and *Brady* claim fail under due process and, thus, cannot form any part of an equal protection claim. To the extent the equal protection claim is based upon the fabrication of evidence or a *Brady* violation, it is dismissed.

### C. Count II: Violation of Due Process under 42 U.S.C. § 1983

In Count II, the plaintiff sets out numerous factual allegations that could possibly support a due process claim. The Court finds that the plaintiff alleges a due process violation based on the following underlying conduct: (1) fabrication of evidence; (2) withholding exculpatory evidence in violation of *Brady v. Maryland;* (3) denial of judicial redress; (4) exorbitant bail; and (5) conspiracy to convict. The Court will address each potential factual basis in turn.

### i. Fabrication of Evidence

Plaintiff attempts to bring a § 1983 due process claim by alleging that officers fabricated evidence against him, leading to an indictment and pre-trial detention before his eventual acquittal. Defendants move to dismiss, claiming that the plaintiff has no actionable due process claim arising from the underlying conduct.

The law in this area has shifted slightly in recent years. Until recently, it has been abundantly clear that "fabricating evidence . . . is not an actionable constitutional wrong." *Fields v. Wharrie,* 672 F.3d 505, 516-17 (7th Cir. 2012) (citing *Buckley v. Fitzsimmons,* 20 F.3d 789, 795-96 (7th Cir. 1994)). The Seventh Circuit based its conclusion upon the similarity between evidence fabrication and malicious prosecution. When criminal proceedings are instituted by a plaintiff based upon false evidence or testimony, the claim is in essence, "one for malicious prosecution rather than a due process violation." *Brooks v. City of Chicago,* 564 F.3d 830, 833 (7th Cir. 2009) (quoting *McCann v. Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2003)).

The Seventh Circuit applied these rules to two cases factually similar to the present case: *Fox v. Hayes,* 600 F.3d 819 (7th Cir. 2010) and *Brooks v. City of Chicago,* 564 F.3d 830 (7th Cir. 2009). In both of cases, the court did not allow an acquitted plaintiff who suffered a pretrial detention before his acquittal to bring a due process claim based on evidence fabrication.

In *Fox,* the plaintiff was charged with murdering his daughter and was detained before trial. *Fox,* 600 F.3d at 825. DNA testing eventually showed that

the plaintiff could not have committed the murder, and the charges were dropped. *Id.* The plaintiff sued the officers under § 1983, alleging that the fabrication of evidence constituted a violation of federal due process. *Id.* at 841. The court found that the due process claim failed because the defendants had an adequate malicious prosecution remedy for the alleged misconduct. *Id.* Similarly, the plaintiff in *Brooks* was arrested and held for five months before being released. *Brooks,* 564 F.3d at 831. The plaintiff sued, alleging a due process violation arising from false police reports. *Id.* at 833. The court found that this claim failed because it was essentially one for malicious prosecution and, as a result, the plaintiff could not bring a due process claim. *Id.* (quoting *McCann v. Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2003)).

Ulmer's claims are factually indistinguishable from the rejected claims in *Fox* and *Brooks.* Like the plaintiffs in those cases, Ulmer alleges that he was charged based upon fabricated evidence and suffered a lengthy pre-trial detention during the proceedings and subsequent appeals. Since there was no conviction, Ulmer's claim amounts to a state law malicious prosecution claim and cannot be brought under due process. *See Fox,* 600 F.3d at 841; *see also Brooks,* 564 F.3d at 833. Following Seventh Circuit precedent in cases of pre-trial detainees without a conviction, Ulmer's due process claim fails because a state law malicious prosecution claim provided an adequate remedy for the defendants' alleged misconduct.

Plaintiff attempts to counter this finding by arguing that *Whitlock v. Brueggemann,* 682 F.3d 567 (7th Cir. 2012) allows his due process evidence fabrication claim. In *Whitlock,* the court determined that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock,* 682 F.3d at 580. In contrast to *Fox* and *Brooks,* this ruling opened the door to the possibility that some evidence-fabrication due process claims could be brought under § 1983. As a result, the plaintiff argues that *Whitlock* stands for the proposition that his situation supports a due process claim under § 1983. This argument fails because *Whitlock* deals with circumstances that are different than Ulmer's case.

In *Whitlock,* a prosecutor fabricated evidence which led to a conviction for crimes that the two defendants did not commit. As a result, the defendants spent 17 and 21 years in prison respectively. *Whitlock,* 682 F.3d at 570. Eventually, it was found that the defendants were framed, and they were released. *Id.* at 572. At that point, the defendants brought a § 1983 due process claim based upon fabricated evidence. *Id.* at 573. The court found that fabricating evidence violates due process "if that evidence is later used to deprive the defendant of her liberty in some way." *Id.* at 580. Since defendants were imprisoned for a combined 28 years, their liberty was deprived, and the fabricated evidence violated their due process rights. *Id.*

Plaintiff highlights *Whitlock* to contend that he can bring a due process claim because the fabricated evidence led to a deprivation of liberty, namely his detention

through the appeals process. Initially, this line of thinking may appear to make sense because a pre-trial detention may count as a deprivation of liberty. *See Saunders-El v. Rohde,* 778 F.3d 556, 561 (7th Cir. 2015). *Whitlock,* though, is distinguishable from the present case. The court in *Whitlock* found that the fabrication of evidence caused harm because it was introduced against the defendants at trial and "was instrumental in their convictions." *Whitlock,* 682 F.3d at 582. This language suggests that due process is only violated if fabricated evidence secures a wrongful conviction. *See Alexander v. McKinney,* 692 F.3d 553, 557 (7th Cir. 2012) (stating that *Whitlock* held that a prosecutor who fabricates evidence violates due process if the evidence is used to obtain a wrongful conviction). In Ulmer's case, he was never convicted because of the fabricated evidence. Instead, the prosecutors decided to *nolle prosequi* the charges before any wrongful conviction. While *Whitlock* demonstrates that a pre-trial detainee may sometimes bring a due process claim when fabricated evidence leads to a conviction, *Fox* and *Brooks* still prohibit an evidence fabrication claim brought by a plaintiff who was acquitted.

Plaintiff tries to go around *Fox* and *Brooks* by claiming that, although their facts are identical to the present case, those cases were overruled in *Whitlock*. That argument is without merit. Lower courts "in the hierarchy apply their precedents unless overruled, even if they seem incompatible with more recent decisions," and "only an express overruling relieves an inferior court of the duty to follow decisions on the books." *A Woman's Choice-East Side Women's Clinic v. Newman,* 305 F.3d

684, 687 (7th Cir. 2002).  Broad language in an opinion must be understood in that context.  *Todd v. Collecto, Inc.,* 731 F.2d 738 (7th Cir. 2013).

Although *Whitlock* held that an officer violates due process if he manufactures evidence that is later used to deprive the defendant of liberty, *Whitlock,* 682 F.3d at 580, this case chose not to expressly overrule *Fox* and *Brooks.* First, the *Whitlock* court never mentioned *Fox* or *Brooks* at all.  Second, the holding in *Whitlock* can easily co-exist with *Fox* and *Brooks* when the cases are viewed within their specific context. In *Whitlock,* the plaintiff had been convicted, while in *Fox* and *Brooks* the plaintiffs had been charged and detained, but not convicted.  In light of controlling precedent as a whole, the "deprivation of liberty" alluded to in *Whitlock* must be read within the context of a conviction.

In *White v. City of Chicago,* No. 14 C 9915, 2016 WL 640523 (N.D. Ill. Feb. 18, 2016), a court in this district grappled with the apparent tension between *Whitlock*, *Brooks* and *Fox* while addressing a situation highly similar to Ulmer's.  There, officers fabricated evidence to arrest and charge the plaintiff with a criminal offense related to contraband found at his apartment.  *Id.* at *1.  Although the information was false, the plaintiff spent 16 months in jail awaiting trial before being acquitted. *Id.* at *2.  Distinguishing the case from *Whitlock* and instead following *Fox* and *Brooks*, the court found that the plaintiff could not bring a § 1983 due process claim for fabricated evidence.  *Id.* at *6.  The court recognized that this conclusion "may appear difficult to square with the passage in *Whitlock* stating that 'a police officer who manufactures false evidence against a criminal defendant violates due process

19

if that evidence is later used to deprive the defendant of liberty in some way,'" *id.* (quoting *Whitlock,* 682 F.3d 567 at 580), especially since a "pretrial detention deprives the civil plaintiff of liberty 'in some way,' even if there is no conviction." *Id.* Nonetheless, the court decided that the broad language of *Whitlock* had to be read in the specific context of a convicted plaintiff. Since *Fox* and *Brooks* were not overruled, *Whitlock's* generalities could not be ascribed to a plaintiff who was detained before trial, but never convicted. *Id.* As the *White* court itself succinctly described, "if the defendant fabricated evidence that the plaintiff committed a crime *and the plaintiff was convicted as a result*, the plaintiff has a viable *Whitlock* claim." *Id.* (emphasis added). On the other hand, if the plaintiff, as in *Fox* and *Brooks,* "was acquitted or the charges were dropped before trial, a viable state law malicious prosecution claim is the only process to which the due process clause entitles him." *Id.*

This Court chooses to follow *White*'s persuasive understanding of *Fox, Brooks,* and *Whitlock*. In this case, like *White*, the plaintiff was indicted and detained because of allegedly fabricated evidence. Importantly, the plaintiff was never convicted. This fact bars the availability of a *Whitlock* claim. Like the plaintiffs in *Fox, Brooks,* and *White,* Ulmer's due process evidence-fabrication claim fails because he was not convicted. Since the evidence-fabrication claim is essentially one for malicious prosecution, he could have brought that claim in state court. Although *Whitlock* opened the door to some uncertainty in the case of pre-trial detainees who were released before being convicted, *Fox* and *Brooks* were never

overturned and are the precedents that most closely resemble, and thus control, the present case. As in those cases, the due process claim based upon evidence fabrication fails.

Plaintiff additionally argues that the Second Circuit's decision in *Zahrey v. Coffey,* 221 F.3d 342 (2nd Cir. 2000) entitles him to due process relief. This argument also fails. *Zahrey* holds that a due process evidence-fabrication claim may proceed when the plaintiff was detained before trial even if he was subsequently acquitted. *Id.* at 346. This holding contradicts *Fox* and *Brooks* and, if followed, would entitle the plaintiff to relief under the due process clause. Nonetheless, this Court must follow Seventh Circuit precedent and owes no more than a respectful consideration to the views of other circuits. *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1124 (7th Cir. 1987). Since *Zahrey* is not binding precedent in this circuit, as *Fox* and *Brooks* are, this Court cannot apply that ruling to this case.

As a result of the foregoing considerations, the plaintiff's § 1983 due process claim based upon fabrication of evidence is not actionable because the claim is essentially one for malicious prosecution, and state law already offered an adequate remedy to Plaintiff for that underlying conduct. To the extent the due process claim is based upon fabrication of evidence, it is dismissed.

### ii. *Brady* Violation

Next, Plaintiff attempts to bring a § 1983 claim under the doctrine outlined in *Brady v. Maryland,* 373 U.S. 83 (1963). The Court analyzes this claim under Count II because it is appropriately brought as a due process claim, not equal

protection. *See Brady,* 373 U.S., at 87 (holding that a State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment). Plaintiff argues that the officers violated *Brady* when they withheld and fabricated evidence pertaining to his innocence. Defendants move to dismiss, claiming that the plaintiff has no actionable *Brady* claim because there was no trial.

The "term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence." *Strickler v. Greene,* 527 U.S. 263, 280 (1999). However, there is "never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281. This language about a verdict caused the Seventh Circuit to note that it is "doubtful . . . that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation." *Carvajal v. Dominguez,* 542 F.3d 561, 570 (7th Cir. 2008).

*Bianchi v. McQueen* is instructive in this regard. *Bianchi v. McQueen*, No. 12 C 364, 2014 WL 700628, at *4 (N.D. Ill. Feb. 24, 2014). In that case, the plaintiffs were acquitted after a bench trial. *Id.* at *4. They then brought a due process claim based upon the withholding of material exculpatory evidence in violation of *Brady*. *Id.* at *9. The court found the plaintiff could not bring a *Brady* claim because an acquitted defendant does not have a constitutional *Brady* right. *Id.* at *12.

Ulmer's *Brady* claim suffers the same defect as the plaintiffs in *Bianchi*. In *Bianchi,* the acquitted plaintiffs could not bring a *Brady* claim even though the

withholding of evidence resulted in a trial. In Ulmer's case, there never even was a trial. If a suppression of evidence that results in a trial cannot be brought under *Brady* when the plaintiff was acquitted, it is also clear that a *Brady* claim cannot be brought based upon suppressed evidence that never even led to trial. Relying upon the Seventh Circuit's binding precedent in *Carvajal* and persuasive authority in *Bianchi,* this Court agrees that an acquitted defendant cannot establish the requisite prejudice for a *Brady* violation. As a result, to the extent that Ulmer's due process claim is based upon a *Brady* violation, the claim is dismissed.

### iii. Denial of Judicial Redress

Plaintiff argues that the defendants obstructed his right to seek legal redress under the First and Fourteenth Amendments. He alleges that their actions either prevented him from defending himself in the underlying criminal proceeding or from pursuing a civil action, effectively denying him meaningful access to the courts.

The "Supreme Court has affirmed that the First and Fourteenth Amendments safeguard an individual's right to seek legal redress for claims that have a reasonable basis in law and fact." *Christopher v. Harbury,* 536 U.S. 403, 414-415 (2001). As a result, an interference by a state actor with an individual's right to court access may be actionable under § 1983. *Bounds v. Smith,* 430 U.S. 817, 822 (1977). Plaintiff is correct to point out that the Seventh Circuit recognizes the requirement that judicial access must be "adequate, effective, and meaningful." *Rossi v. City of Chicago,* 790 F.3d 729, 734 (7th Cir. 2015). In addition, it is clear

that "when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." *Vasquez v. Hernandez,* 60 F.3d 325, 329 (7th Cir. 1995). Nonetheless, to determine whether a denial of judicial access occurred, a plaintiff must allege that the police's actions "harmed his ability to obtain appropriate relief." *Rossi,* 790 F.3d at 736.

The question before this Court, then, is whether the facts as alleged show that state actors harmed the plaintiff's ability to obtain adequate relief and an opportunity for judicial redress. In the past, the Seventh Circuit has examined whether a police cover-up denied a plaintiff access to judicial relief. The present case is similar to *Thompson v. Boggs,* 33 F.3d 847 (7th Cir. 1994) and *Rossi v. City of Chicago,* 790 F.3d 729 (7th Cir. 2015).

In *Thompson,* a police officer injured the plaintiff while arresting him. The plaintiff then sued for denial of judicial redress because the officer did not describe the use of force in the police report. *Thompson,* 33 F.3d at 849. The court decided that the plaintiff was not denied access to the court because he knew the facts concerning the arrest which enabled him "to promptly file the instant lawsuit," unlike a situation in which the true facts were concealed. *Id.* at 852. Similarly, the cover-up in this case did not deny Ulmer judicial access because he knew the facts concerning his false arrest, subsequent interrogation, and wrongful prosecution. In addition, Ulmer knew that the police called him into the police station for an alleged parole violation, only to attempt to coerce a confession for a home invasion and

arrest him. Like *Thompson,* he knew the facts concerning this situation and was able to promptly file the lawsuit. This is not a situation in which the plaintiff had no way of knowing the true facts because of the alleged cover-up.

In *Rossi,* the plaintiff was assaulted by an off-duty Chicago police officer. A Chicago Police Department detective was assigned to investigate but "exerted no discernible effort" to perform a proper investigation. *Rossi,* 790 F.3d at 732. Plaintiff sued under § 1983 alleging a violation of his constitutional right to judicial access because the failure to investigate hurt his civil suit against the officer. *Id.* The court found that the plaintiff was not denied judicial redress because he failed to show that police actions hurt his ability to obtain appropriate relief. *Id.* at 736. Specifically, the plaintiff was able to discover facts on his own, a proper investigation was later conducted, and the true facts were disclosed before the limitations period expired. *Id.* As previously discussed, Ulmer knew or was otherwise able to discover the facts about his false arrest and malicious prosecution. In addition, he was aware that he incurred an injury before the limitations period expired. Furthermore, Ulmer got the criminal charges against him dropped and had the ability to pursue his state law malicious prosecution claim and false arrest claim within the limitations period. The fact that Ulmer brought his civil claim at all further shows that no one obstructed his ability to access the courts. In the two years since his release, he was free to bring the civil action as he eventually did in January 2014. *See Buchmeier v. City of Berwyn*, No. 14 C 6750, 2015 WL 4498742, at *3 (N.D. Ill. July 23, 2015) (stating that a previously filed lawsuit for claims

related to the incident indicated that a plaintiff had an unobstructed ability to seek legal redress). Here, the alleged cover-up did not conceal any information that was later released, prompting the civil lawsuit. Instead, like *Rossi,* Ulmer knew the circumstances from the time he was released and could have brought suit within the statute of limitations.

The current case is different from *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984). In *Bell,* police officers killed Daniel Bell after a chase and subsequently created a story that he had threatened officers with a weapon. *Id.* at 1216. As a result of a cover-up, the officers were cleared of wrongdoing. *Id.* at 1222. Twenty years later, the fabricated story was revealed, and Bell's family filed a lawsuit. The district court awarded damages and the appellate court affirmed the existence of a constitutional violation for denial of judicial redress. *Id.* at 1260. Discussing *Bell,* the Seventh Circuit in *Rossi,* 790 F.3d at 729, stated that the court "factored heavily the interval between the initial investigation and the disclosure of the true facts." *Id.* at 736. Since the period of limitations had run after two decades, the possibility of timely legal redress had been "permanently thwarted by the cover-up." *Id.*

The situation in *Bell* is different from Ulmer's situation. As explained in *Rossi,* the *Bell* plaintiff's access to the court had been thwarted. In *Bell,* the family of the deceased man was not involved in the shooting and had no way of finding the true facts because of the cover-up. In this case, Ulmer had the ability to defend himself criminally and pursue a civil action. In fact, the plaintiff's successful

motion *in limine,* which led the prosecutors to *nolle prosequi* the charges, demonstrates Ulmer's ability to gain adequate access to the court. Regarding the civil case, the plaintiff could have brought the false arrest claim within the statute of limitations and he also had the option of bringing a timely state law malicious prosecution claim after the charges were dropped. Unlike *Bell,* the cover-up did not completely deny Ulmer the possibility of judicial redress.

The plaintiff relies upon *Vasquez v. Hernandez,* 60 F.3d 325 (7th Cir. 1995) to support his judicial redress claim. Contrary to the plaintiff's theory, however, the court in *Vasquez* found that the plaintiff could *not* bring this claim because there was no constitutional injury. *Id.* at 329. In so holding, the court stated that "not every act of deception in connection with a judicial proceeding gives rise to a constitutional action." *Id.* The *Vazquez* plaintiff's constitutional rights were preserved because the conspiracy did not prevent a full and open disclosure of facts crucial to the cause of action. *Id.* Furthermore, nothing prevented the plaintiffs from pursuing a tort action in the state court, and the value of such an action was not reduced by the cover-up. *Id.* As previously explained, Ulmer's constitutional rights were preserved despite the best efforts of the police to frame him. Ulmer was able to learn the facts crucial to his cause of action, which is proven by the in-depth factual allegations recounted in the civil action currently before the court. Finally, no basis exists in the record to support the notion that the cover-up somehow prevented him from pursuing his tort action directly after the charges were dismissed.

Finally, Ulmer argues that the prosecutor's use of the *nolle prosequi* procedure has deterred him from pursuing redress through the courts. This argument is without merit. First, although the prospect of re-initiation of the same charges may discourage a plaintiff from bringing civil suit, it does not "permanently thwart" the ability to seek redress. *Rossi,* 790 F.3d at 736. Second, the defendant correctly notes that the *nolle prosequi* of the charges enabled the plaintiff to file his malicious prosecution claim. As such, this procedure did not deny plaintiff's ability to access the courts. Rather, it facilitated his ability to seek redress.

As discussed above, the plaintiff: (1) was present during his false arrest and prosecution; (2) knew the facts of the case despite the alleged cover-up; and (3) successfully defended himself in a criminal case and brought a civil lawsuit. As a result, the defendants' alleged interference with the plaintiff's ability to access the courts fails to give rise to a constitutional violation. The plaintiff thus fails to state an actionable claim for denial of judicial redress under § 1983. Count II is dismissed to the extent it is based upon that alleged denial.

### iv.  Exorbitant Bail

In their motion to dismiss, the defendants argue that any claim based upon exorbitant bail is time-barred. In response, the plaintiff states that Count II is not an Eighth Amendment excessive bail claim. Response in Opposition to Motion to Dismiss p. 6. In so stating, the plaintiff did not specifically respond to the argument that the excessive bail claim was time-barred.

A person "waives an argument by failing to make it before the district court." *G&S Holdings LLC v. Continental Cas. Co.,* 697 F.3d 534, 538 (7th Cir. 2012). This rule applies whether "it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate." *Id.* In this case, Plaintiff fails to address the argument regarding the timeliness of his excessive bail claim. This argument is waived.

Regardless of the waiver, an excessive bail claim would not be timely. As previously stated, a § 1983 claim accrues when the plaintiff "knows or should know that his constitutional rights have been violated," *Wilson,* 956 F.2d at 740, or when the plaintiff has "a complete and present cause of action." *Wallace,* 549 U.S. at 388. The plaintiff was subject to the bail terms immediately upon arrest in October 2009. Since the purported injury coincided with his arrest, the claim began to accrue at that time. Bringing the excessive bail claim in 2014 is outside of Illinois' designated two-year statute of limitations for § 1983 claims. Regardless of the waiver, this claim would be time-barred. To the extent the due process claim relies upon the plaintiff's excessive bail, it is dismissed.

### v. Conspiracy

In Count II, Plaintiff also alleges a § 1983 conspiracy to deprive him of his constitutional rights. [1] at ¶ 83. Since a constitutional deprivation is a necessary predicate to a § 1983 conspiracy action, the plaintiff cannot bring his conspiracy claim. Conspiracy is not an independent basis of liability in § 1983 actions. *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008). An "actual denial of a civil right is

necessary before a [conspiracy] cause of action arises." *Goldschmidt v. Patchett,* 686 F.2d 582, 585 (7th Cir. 1982).

In *Buchmeier v. City of Berwyn,* the plaintiffs failed to state an actionable § 1983 claim based upon denial of judicial redress. *Buchmeier,* 2015 WL 4498742, at *4. As a result, the plaintiffs' § 1983 conspiracy claims also failed because "a constitutional deprivation is a necessary predicate to a § 1983 conspiracy action." *Id.* (citing *Goldschmidt,* 686 F.2d at 585); *see also Buford v. City of Chicago, Ill.*, No. 8 C 214, 2009 WL 4639747, at *4 (N.D. Ill. Dec. 3, 2009) (finding that Plaintiff could not bring a § 1983 conspiracy claim because underlying Fourth Amendment false arrest claim failed); *C.H. v. Grossman*, No. 14 C 8174, 2015 WL 4554774, at *5 (N.D. Ill. July 28, 2015) (holding that, since substantive due process and false arrest claims were dismissed, Plaintiff did not allege deprivation of a constitutional right, and the § 1983 conspiracy claim failed as well).

In Ulmer's case, he has failed to allege an actionable constitutional violation. Since the due process claims based upon the fabrication of evidence, *Brady* violation, denial of judicial access, and exorbitant bail are not actionable, neither is the § 1983 conspiracy claim. *See Boothe v. Sherman,* 66 F.Supp.3d 1069, 1077 (N.D. Ill. 2014) (defendants "cannot be held liable under § 1983 for conspiring to violate [Plaintiff's] due process rights unless they actually violate her due process rights"). The same logic extends to a claim for conspiracy to violate equal protection. Since the Court has found that Ulmer's equal protection claims are based upon

underlying conduct that is either time-barred or fails to state a constitutional violation, the conspiracy claim for that conduct also fails.

Plaintiff further alleges a conspiracy under § 1985 and 1986. Conspiracy liability under § 1985 depends on proof of an underlying constitutional violation. *Bublitz v. Cottey,* 327 F.3d 485, 488 n. 3 (7th Cir. 2003). Similarly, a finding of § 1985 conspiracy is a necessary prerequisite to a finding of liability under § 1986. *Williams v. St. Joseph Hospital,* 629 F.2d 448, 451-52 (7th Cir. 1980).

In *Bublitz,* a plaintiff brought a § 1983 claim alleging that the police deprived him of his Fourth and Fourteenth Amendment rights. *Bublitz,* 327 F.3d at 487-88. The court dismissed the § 1983 claim, finding that the Fourth and Fourteenth Amendment did not provide the basis for that claim. *Id.* at 489. Since there was no deprivation of constitutional rights under § 1983, there was similarly no constitutional violation to support the § 1985 and 1986 claims. *Id.* at 488 n. 3. As a result, the court noted that the dismissal of the § 1983 claim was sufficient to dispose of the plaintiff's § 1985 and 1986 claims. *Id.* Similarly, Ulmer has alleged no actionable constitutional violation to support his § 1983 claim. As a result, his § 1985 and 1986 claims cannot be brought.

To the extent that the due process claim relies upon a conspiracy, it is dismissed. For all the reasons set forth in the due process section, the claims based upon fabrication of evidence, *Brady* violation, denial of judicial redress, exorbitant bail, and conspiracy under § 1983 fail to state an actionable claim. As a result, the

plaintiff's § 1983 due process claim based on that underlying conduct is also not actionable. The Court grants the defendants' motion to dismiss Count II.

## IV. Conclusion

On January 28, 2016, this Court granted Plaintiff leave to amend his original complaint with the instruction that: "Plaintiff should take care to articulate: (1) which specific conduct underlies each cause of action, and (2) the date on which each cause of action accrued." [31]. Plaintiff amended his complaint in response to the Court's instruction, but again attempted to shoehorn several different causes of action into each of the two counts of his First Amended Complaint. It is that First Amended Complaint that is currently before the Court. For the reasons set out in this Opinion, the Defendants' motion to dismiss Counts I and II of the First Amended Complaint [33] is granted. The First Amended Complaint is dismissed without prejudice.

The Court will grant Plaintiff a final opportunity to re-plead his case, but with the following instructions: (1) Plaintiff may only re-plead if he can do so in compliance with his Rule 11 obligations; (2) Plaintiff may not base his Second Amended Complaint on any of the factual theories addressed by the Court in this Opinion; and (3) Plaintiff must make explicitly clear which specific factual allegations underlie each cause of action.

IT IS SO ORDERED

Dated: July 11, 2016

_____
Judge John Robert Blakey
United States District Court